**STATE OF HAWAII**, Plaintiff–Appellee, v. **KENNETH L. MORRIS**, aka David M. Thomas, Defendant–Appellant

NO. 15110

(FC–CR. NO. 90–0401(2))

FEBRUARY 7, 1992

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

OPINION OF THE COURT BY PADGETT, J.

Appellant was convicted after a jury trial on two counts of sexual assault in the first degree (Hawaii Revised Statutes (HRS)

§ 707–730), two counts of sexual assault in the third degree (HRS § 707–732), and one count of promoting a detrimental drug in the first degree (HRS § 712–1247).

The alleged minor victim was between seven and eight years old at the time of trial and between five and six and one–half years at the time of the alleged incidents. Like many other child abuse cases, this was a case in which there was no other witness to the alleged incidents, there was no physical evidence that they had occurred, and the jury was left to believe either the child or the appellant.

It was in that context that the appellant, pre–trial, brought a motion in limine seeking to prevent expert medical opinions as to the child's credibility, which were prohibited under *State v. Batangan*, 71 Haw. 552, 799 P.2d 48 (1990). Unfortunately, there is no written order in the record with respect to that motion, and no indication that it was decided.

Nevertheless it is clear that such evidence is inadmissible. As we said in *Batangan*:

> Thus, while expert testimony explaining "seemingly bizarre" behavior of child sex abuse victims is helpful to the jury and should be admitted, conclusory opinions that abuse did occur and that the child victim's report of abuse is truthful and believable is of no assistance to the jury, and therefore, should not be admitted. Such testimony is precluded by HRE Rule 702.

*Id.* at 558, 799 P.2d at 52.

Nevertheless, in the course of the examination of the State's witness, Dr. Michaels, the following occurred:

> Q. [Prosecutor:] Doctor, in this case, is this an acute or chronic case of sexual abuse?
> A. Chronic.
> Q. Would you explain that for the benefit of the jurors?

A.    Chronic sexual abuse, which happens to be the most common form, is an ongoing condition where the child is repetitively victimized by the perpetrator.

MS. ST. SAUVER [defense counsel]:  I'm going to object.  There's absolutely no facts that this witness is testifying as if he knows something about this case.  He's never seen the child, he's never talked to this man.

MR. CARDOZA:  Your Honor, my question was if the doctor could explain what the term chronic sexual abuse is.  That's certainly —

MS. ST. SAUVER:  No, your Honor, he's made a diagnosis that this is such a case.  He doesn't know anything about that.

THE COURT:  Maybe he can rephrase his response.
BY MR. CARDOZA:

Q.    All I'd like you to do is tell us what is —

A.    You're asking for a definition, as I understand it, of chronic versus acute sexual abuse, and that can be answered abstractly with no relevance to this case.

Q.  Could you just explain the terms for us, please?

A.    Chronic sexual abuse is abuse that is performed repetitively over a long period of time by the perpetrator in a period of weeks to months usually.

Reasonable jurors could, and almost certainly would, gather from the above testimony that the doctor, as an expert, was saying that the child in this case had been chronically sexually abused. But the expert had no physical evidence thereof whatsoever.  Thus his opinion had to have been based on the child's statements to others.  This is one of the those cases like *Batangan* where, although the expert witness does not say that the child is truthful, or that he believes the child, the clear implication of his testimony is just that, and the admission of that testimony in this case was reversible error.

There is an additional ground for reversal. During the course of rebuttal argument, the prosecutor, who was the chief prosecutor for the County of Maui, stated:

> [Mr. Cardoza:] Ladies and gentlemen, as a prosecutor, it is my rule, my duty to see to it that there is never a miscarriage of justice in handling a case. Generally, what that means is that we are to see to it that an individual is not brought into a courtroom to be charged with something they didn't do.
>
> MS. ST. SAUVER [defense counsel]: I object. . . .
> THE COURT: Argue the facts, counsel.

A more highly prejudicial statement is hard to conceive. The effect of the statement was to tell the jury that the prosecuting attorney would not have prosecuted the case unless the appellant was guilty. It was, in substance, an expression, by the prosecutor, of his belief in the correctness of the State's case, and the guilt of the appellant. As such, it was an improper, prejudicial argument (*see State v. Marsh*, 68 Haw. 659, 728 P.2d 1301 (1986)), and requires that the conviction be set aside.

Accordingly, we vacate the judgment below and remand the case for a new trial.

*Joyce K. Matsumori–Hoshijo* (*Linda C. Ramirez* on the reply brief), Deputy Public Defenders, for appellant.
*James T. Carter*, Deputy Prosecuting Attorney, for appellee.