214 P.3d 1159

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Clayton Shane SUAN, Defendant–Appellant.**

**No. 29038.**

Intermediate Court of Appeals of Hawai'i.

Aug. 26, 2009.

Phyllis J. Hironaka, Deputy Public Defender, on the briefs, for Defendant–Appellant.

James M. Anderson, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

WATANABE, Acting C.J., FOLEY and LEONARD, JJ.

OPINION of the Court by FOLEY, J.

Defendant–Appellant Clayton Shane Suan (Suan) appeals from the Judgment of Conviction and Sentence (Judgment) filed on February 6, 2008 in the Circuit Court of the First Circuit (circuit court).[1] A jury found Suan guilty of Unauthorized Control of a Propelled Vehicle (UCPV), in violation of Hawaii Revised Statutes (HRS) § 708–836 (Supp.2008).

On appeal,[2] Suan contends the circuit court (1) abused its discretion by allowing Officer Aiu to repeat inculpatory testimony on rebuttal, (2) abused its discretion and plainly erred by allowing the Deputy Prosecuting Attorney (Prosecutor) to question defense witnesses while asserting as fact matters not in evidence, and (3) plainly erred by permitting multiple instances of prosecutorial misconduct during closing argument that cumulatively denied Suan a fair trial. We vacate the Judgment and remand this case for a new trial.

## I.

On January 18, 2007, the State of Hawai'i (State) filed a Felony Information, charging Suan with the offense of UCPV. A jury trial commenced on October 15, 2007 and concluded on October 19, 2007. During trial, the following testimony was given.

Sandra Terada (Terada) testified that on January 12, 2007, she was the registered owner of a silver, four-door, 2004 Jaguar automobile, which had been stolen sometime in December 2006. She did not know Suan and had never given him permission to drive her Jaguar.

Honolulu Police Department (HPD) Officer Lee testified that on January 12, 2007, he was on duty as a member of the Pearl City district Crime Reduction Unit, patrolling the Waipahu/Pearl City/Aiea area in an unmarked police car with HPD Officers Aiu and Hew. While driving in Waipahu, Officer Lee saw the stolen silver, four-door Jaguar parked on the street and noted that it was occupied by two males, but he did not get a good look at the males.

Officer Aiu testified that earlier on January 12, 2007, Officer Lee had received information that a silver, four-door, 2004 Jaguar had been stolen. Officer Aiu stated that while approaching and passing the Jaguar, he saw two males sitting in the front seats. Focusing on the driver, Officer Aiu saw that the male was shirtless and had tattoos. Officer Aiu looked at the driver's face and recognized the driver as Suan. Officer Aiu testified that they confirmed it was the stolen Jaguar from the license plate.

Officer Hew testified that he heard Officer Aiu say to stop the vehicle, turn around, and check out the Jaguar. Officer Hew stated that he shifted his attention and saw two non-Caucasian, non-African-American males in the Jaguar, but he could not describe them more specifically.

Officer Lee testified that he turned the car around, saw the Jaguar leaving the area, and began driving in the same direction as the Jaguar. Officer Aiu spotted the Jaguar in the parking lot of Jack Hall Housing, and Officer Lee drove into the parking lot and pulled up to the Jaguar. Officer Lee testified that he did not see anyone at or running from the vehicle.

Officer Aiu testified that he saw Suan and the Jaguar's passenger running from the Jaguar toward some houses. According to Officer Lee, however, Officer Aiu did not identify Suan at any point.

1. The Honorable Michael A. Town presided.

2. This Opinion was originally filed on July 22, 2009 as a Memorandum Opinion and is filed as a published Opinion pursuant to this court's August 26, 2009 "Order Granting Appellant's Motion for Publication of Memorandum Opinion and Vacating Memorandum Opinion filed on July 22, 2009."

Officer Lee testified that he and Officer Aiu then split up and ran through Jack Hall Housing in search of the men. Officer Hew remained with the Jaguar until Officers Lee and Aiu returned empty-handed. Later that afternoon, Officer Lee called Suan's girlfriend, Alecia Price (Price), asking where Suan could be found.

Price testified that, on the morning of January 12, 2007, Suan told her he was going to Aiea Cue, a pool hall. She walked Suan out of her house and watched him walk down the street toward Aiea Cue. She did not see a Jaguar on the street. Approximately thirty to forty-five minutes later, Suan called her from Aiea Cue. She knew he was calling from Aiea Cue because Aiea Cue's number appeared on her cell phone's caller ID. Suan told Price that he was going to the home of his friend, Christopher Hale (Kia).

Price testified that after talking with Officer Lee, she contacted Suan late afternoon or early evening and told Suan that Officer Lee was looking for him because Officer Lee thought he had seen Suan drive away from him in a stolen vehicle. After Suan denied driving the Jaguar, Price told Suan that she was coming to get Suan to go to the police station to speak with Officer Lee. Price's friend, Liza, drove Price to Kia's apartment. Price went into Kia's bedroom, where she saw Suan and Kia playing video games. Kia's mother and another woman were also in the apartment. Price spoke with Suan in Kia's room, where she stayed with Suan for about an hour. Liza waited outside while Price was in Kia's apartment, and after Price and Suan came out, Liza drove them to the police station.

Kia testified that on January 12, 2007, Suan came over to his apartment between 9:00 and 11:00 a.m. and played video games and watched television all day in Kia's room. Kia knew his mother came home between 2:30 and 3:00 p.m. that day because it was a school day for his sister, Malia. Price arrived at Kia's apartment and was there for less than an hour when Kia left at around 5:00 p.m. to train at 808 Fight Factory gym (808 Gym). On cross-examination, the Prosecutor asked Kia if he knew that the Hawaii Fighting Championship Association (HFC)

had hosted a fighting promotion, Stand Your Ground 2 (SYG event), at Dole Cannery on April 12, 2007 or that an electrical outage had occurred at 6:17 p.m. at the 808 Gym on that same day. Kia denied knowing that either event had taken place.

Kia's mother, Valerie Hale (Hale), testified, confirming that on January 12, 2007 she worked from 9:00 a.m. to 1:30 p.m. and returned home between 2:00 and 2:30 p.m. to find Kia and Suan playing video games in Kia's room. For the next several hours, Hale remained at home, cooking, cleaning, and watching television. Price came over sometime in the afternoon and stayed for a few hours talking with Suan in Kia's room. Kia stayed for awhile after Price's arrival and then left to train at the gym. Price and Suan left after sunset and indicated that they were going to the police station.

Suan testified that on January 12, 2007, he woke up at about 9:00 a.m. at Price's house. A little after 9:00, he walked to Aiea Cue, arrived at Aiea Cue shortly before 9:30 a.m., and called Price from his cell phone. He shot a few games of pool, left Aiea Cue after about forty-five minutes, and caught the bus to Kia's apartment, where he arrived at about 10:30 a.m. He went directly to Kia's room and played video games and hung out with Kia until he left with Price after it was dark outside. Between 10:30 a.m. and 2:30 p.m., Suan and Kia were the only ones at Kia's apartment. Suan confirmed that Hale arrived at about 2:00 or 2:30 p.m. and remembered that Malia also came home and then went outside to play. Suan denied being in any Jaguar at 3:30 p.m. Suan also denied knowing Officer Aiu and did not recall having seen or talked to Officer Aiu before.

On cross-examination, the Prosecutor asked Suan about the buses that could have taken him from Aiea Cue to Kia's apartment. When the Prosecutor stated that "according to the bus schedule, there's only one route on all three different types of buses that go from Aiea to Waipahu," defense counsel objected. The circuit court sustained the objection and instructed the jury to disregard the statement.

On rebuttal, the circuit court permitted the State to recall Officer Aiu over defense counsel's objection. Defense counsel clarified, and the circuit court agreed, that rebuttal would be limited to the issue of how well Suan knew Officer Aiu. In his testimony, Officer Aiu confirmed that he testified during the State's case-in-chief that he had encountered Suan on approximately six occasions, including one during which he had actually talked to Suan. The State submitted a photo of Suan that had been taken during a prior contact Officer Aiu's unit had with Suan. Officer Aiu concluded that he was "100% sure" Suan was the man in the photo and the same person Officer Aiu saw driving the stolen Jaguar.

During closing arguments, the Prosecutor stated:

> So you may be wondering why, why did the State bring them [Officers Lee and Hew]? Why did the State waste our time? It's definitely no waste of time. The purpose of bringing both of those officers here are [sic] not only to testify to the fact that this incident did happen on January 12th of 2007, but the fact that there was no conspiracy here against [Suan]. The fact is that these officers have integrity. This—their testimony really is a testament to the fact that the system does work. They were telling the truth. They have integrity. They could have come in here no reports, told you anything. They didn't.

The Prosecutor further stated:

> In terms of the burden of proof, the State does have the burden of proof, and the State has proved in this case that [Suan] was driving that vehicle on January 12th, 2007. [Suan] brought up this alibi defense. When you are bringing up an alibi defense, it's highly likely you're going to bring everybody and their brother's mother's neighbor to say, yes, I was someplace else. Where's Malia, Kia's sister? Where is the neighbor that was possibly at their house? Where is Liza, who was in the car for one hour? Where are the people from Aiea Cue? Where are the people who he had to pay at Aiea Cue to play those ten games? Where are they?

The purpose of the State today in this case is not to convict an innocent person. Resources, time, and dollars of the taxpayers are spent to seek justice in this case for Sandra Terada.

The jury found Suan guilty as charged. The State filed a Motion for Sentencing of Repeat Offender, which the circuit court granted.

On February 6, 2008, the circuit court sentenced Suan to five years of incarceration, with a reduced mandatory minimum of one year as a repeat offender. Suan timely appealed.

## II.

### A. Prosecutorial Misconduct

 It is established that "arguments of counsel which misstate the law are subject to objection and to correction by the court." *State v. Mahoe*, 89 Hawai'i 284, 290, 972 P.2d 287, 293 (1998) (citing *Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)) (emphasis omitted). Improper statements by [the State] may serve as grounds for vacating a judgment of conviction and remanding the case for a new trial. *See State v. Wakisaka*, 102 Hawai'i 504, 516, 78 P.3d 317, 329 (2003) (holding that prosecutor's comment on defendant's failure to testify constituted plain error affecting the defendant's substantial rights); *State v. Rogan*, 91 Hawai'i 405, 415, 984 P.2d 1231, 1240 (1999) (reversing the defendant's conviction because "arguments by the prosecution contrived to stimulate racial prejudice" might have contributed to the conviction).

In order to "determine whether reversal is required under [Hawai'i Rules of Penal Procedure] Rule 52(a) because of improper remarks by a prosecutor which could affect a defendant's right to a fair trial, we apply the harmless beyond a reasonable doubt standard of review." *State v. Sanchez*, 82 Hawai'i 517, 528, 923 P.2d 934, 945 (App. 1996), *cert. denied*, 84 Hawai'i 127, 930 P.2d 1015 (1996) (quoting *State v. Suka*, 79 Hawai'i 293, 301, 901 P.2d 1272, 1280 (App. 1995), *cert. denied*, 79 Hawai'i 341, 902 P.2d 976 (1995), *overruled on other*

*grounds by State v. Holbron*, 80 Hawai'i 27, 32 n. 12, 904 P.2d 912, 917 n. 12 (1995) (other citation omitted)). *See also Miller v. State*, 712 So.2d 451, 453 (Fla.Dist.Ct. App.1998) (reversing the defendant's burglary and theft convictions where the prosecutor made improper comments pertaining to the defendant's defense of voluntary intoxication defense as "it could not be said that this error was harmless beyond a reasonable doubt") (citation omitted). This standard "requires an examination of the record and a determination of whether there is a reasonable possibility that the error complained of might have contributed to the conviction." *State v. Sawyer*, 88 Hawai'i 325, 329 n. 6, 966 P.2d 637, 641 n. 6 (1998) (internal quotation marks and citation omitted).

*State v. Espiritu*, 117 Hawai'i 127, 140–41, 176 P.3d 885, 898–99 (2008) (brackets in original and footnotes omitted).

### B. Plain Error/Rule 52(b)

■ Hawai'i Rules of Penal Procedure Rule 52(b) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Therefore, an appellate court "may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Staley*, 91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999) (internal quotation marks and citation omitted).

■ The appellate court "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Nichols*, 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006) (quoting *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998)). An appellate court's "power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes." *Nichols*, 111 Hawai'i at 335, 141

P.3d at 982 (quoting *State v. Kelekolio*, 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993)).

### III.

Suan contends he was denied a fair trial when the Prosecutor, during her closing argument, improperly (1) bolstered the officers' credibility, (2) suggested it was Suan's burden to produce proof by explaining the absence of some potential alibi witnesses, (3) stated that the State's purpose was not to prosecute an innocent person, and (4) argued that state resources had been expended to seek justice for Terada. Suan's counsel made no objections to these alleged improper statements made by the Prosecutor.

■ Where defense counsel failed to object to the statements made during the Prosecutor's closing argument, we again determine whether the statements were improper and, if so, whether they constituted plain error that affected Suan's substantial rights. *State v. Clark*, 83 Hawai'i 289, 304, 926 P.2d 194, 209 (1996).

### (A)

■ The Prosecutor stated during her closing argument:

So you may be wondering why, why did the State bring [Officers Lee and Hew]? Why did the State waste our time? It's definitely no waste of time. The purpose of bringing both of those officers here are [sic] not only to testify to the fact that this incident did happen on January 12th of 2007, but the fact that there was no conspiracy here against [Suan]. *The fact is that these officers have integrity. This—their testimony really is a testament to the fact that the system does work. They were telling the truth. They have integrity. They could have come in here no reports, told you anything. They didn't.*

(Emphasis added.)

The Prosecutor's statement that "these officers have integrity [and] . . . their testimony really is a testament to the fact that the system does work [because] . . . they could have come in here, no reports, told you anything[, but] they didn't" was improper. It is

well established that "[p]rosecutors are bound to refrain from expressing their personal views as to a defendant's guilt or credibility of witnesses." *State v. Sanchez*, 82 Hawai'i 517, 534, 923 P.2d 934, 951 (App. 1996) (internal quotation marks, citation, and ellipsis in original omitted). Although the Prosecutor did not explicitly refer to herself, her statement nevertheless expressed her personal view of the officers' credibility.

**(B)**

■ Although the circuit court properly instructed the jury that it was the State's, not Suan's, burden of producing proof, the Prosecutor subsequently stated during closing:

> In terms of the burden of proof, the State does have the burden of proof, and the State has proved in this case that [Suan] was driving that vehicle on January 12th, 2007. *[Suan] brought up this alibi defense. When you are bringing up an alibi defense, it's highly likely you're going to bring everybody and their brother's mother's neighbor to say, yes, I was someplace else. Where's Malia, Kia's sister? Where is the neighbor that was possibly at their house? Where is Liza, who was in the car for one hour? Where are the people from Aiea Cue? Where are the people who he had to pay at Aiea Cue to play those ten games? Where are they?*

(Emphasis added.)

The Prosecutor's statement, which brought attention to Suan's alibi defense and Suan's failure to "bring everybody and their brother's mother's neighbor to say yes, I was someplace else," was improper. In *State v. Mainaaupo*, 117 Hawai'i 235, 178 P.3d 1 (2008), the Hawai'i Supreme Court held that "the prosecution may invoke the adverse inference against the defendant for his failure to call a witness when it would be natural under the circumstances for the defendant to

call the witness and *when the comments do not suggest to the jury that it was the defendant's burden to produce proof by explaining the absence of witnesses or evidence." Id.* at 257, 178 P.3d at 23 (internal quotation marks, citations, and brackets in original omitted; emphasis added). The Prosecutor's statement suggested to the jury that it was Suan's burden to explain the absence of witnesses. Accordingly, the statement constituted misconduct.[3]

**(C)**

■ The Prosecutor's statement that "[t]he purpose of the State today in this case is not to convict an innocent person" does not refer to the Prosecutor directly, but has the effect of telling the jury that the Prosecutor would not have prosecuted the case unless Suan was guilty. In *State v. Morris*, 72 Haw. 527, 825 P.2d 1051 (1992), the Hawai'i Supreme Court held that a prosecutor's statement that "we are to see to it that an individual is not brought into a courtroom to be charged with something they didn't do" warranted reversal because

> [t]he effect of the statement was to tell the jury that the prosecuting attorney would not have prosecuted the case unless the appellant was guilty. It was, in substance, an expression, by the prosecutor, of his belief in the correctness of the State's case, and the guilt of the [defendant]. As such, it was an improper prejudicial argument and requires that the conviction be set aside.

*Id.* at 529, 825 P.2d at 1052 (citation omitted); *see also, State v. Palisbo*, 93 Hawai'i 344, 360, 3 P.3d 510, 526 (App.2000) (holding that the prosecutor's statement that "[w]e do not prosecute innocent people" was "obviously improper"). Because "[p]rosecutors are bound to refrain from expressing their personal views as to a defendant's guilt," *San-*

---

3. Furthermore, it would not have been "natural under the circumstances" for Suan to have called the individuals referred to by the Prosecutor. Suan testified that during the time he was allegedly behind the wheel of the Jaguar, he had been with Kia at Hale's apartment and had remained at the apartment until he left with Price for the police station. Accordingly, it was "natu-

ral" for Suan to call Kia, Hale, and Price as defense witnesses, as he did; had he not, the Prosecutor could have invoked the adverse inference argument for those individuals. Instead, the Prosecutor invoked the argument for individuals who had been peripherally mentioned by the defense witnesses.

*chez,* 82 Hawaiʻi at 534, 923 P.2d at 951 (internal quotation marks, citation, and ellipsis omitted), the circuit court plainly erred in permitting the improper statement.

### (D)

 The Prosecutor's statement in closing argument that "[r]esources, time, and dollars of the taxpayers are spent to seek justice in this case for Sandra Terada" was also improper because it injected issues broader than Suan's guilt or innocence under the controlling law into the case and, in effect, diverted the jury from its duty to decide the case based on the evidence. *Sanchez,* 82 Hawaiʻi at 533, 923 P.2d at 950; 1 ABA Standards for Criminal Justice, The Prosecution Function, Standard 3–5.8(d) (2d ed.1986).

 In light of the multiple instances of improper comments by the Prosecutor during closing argument, we cannot conclude beyond a reasonable doubt that the Prosecutor's conduct did not contribute to Suan's conviction. *Sanchez,* 82 Hawaiʻi at 534, 923 P.2d at 951 (holding that "the cumulative effect of the prosecutor's misconduct was to deny Defendant a fair trial"); *see also State v. Marsh,* 68 Haw. 659, 661, 728 P.2d 1301, 1302 (1986) (holding that "prosecutor's improper comments, taken as a whole, substantially prejudiced [defendant's] right to a fair trial"). The cumulative effect of the Prosecutor's misconduct substantially prejudiced Suan's right to a fair trial.

Because we vacate and remand this case for a new trial, Suan's other points on appeal are moot.

### IV.

The Judgment of Conviction and Sentence filed on February 6, 2008 in the Circuit Court of the First Circuit is vacated, and this case is remanded for a new trial.