231 P.3d 1001

STATE of Hawai'i, Plaintiff–Appellee,

v.

Timothy A. WALSH, Defendant–
Appellant.

No. 29790.

Intermediate Court of Appeals of Hawai'i.

May 26, 2010.

As Amended May 27, 2010.

Craig W. Jerome, Deputy Public Defender, on the briefs, for Defendant–Appellant.

Renee Ishikawa Delizo, Deputy Prosecuting Attorney, County of Maui, on the briefs, for Plaintiff–Appellee.

FOLEY, Presiding Judge, and REIFURTH, J.; and FUJISE, J., Concurring Separately.

Opinion of the Court by REIFURTH, J.

Defendant–Appellant Timothy A. Walsh (Walsh) appeals from the March 31, 2009 Judgment, entered in the Circuit Court of the Second Circuit (circuit court),[1] finding him guilty of Assault in the Second Degree in violation of Hawaii Revised Statutes § 707–

---

1. The Honorable Joseph E. Cardoza presided.

711(1)(b) (Supp.2009), sentencing him to five years of incarceration with a mandatory minimum of one year and eight months, and ordering him to pay restitution of $1,137.10 and a Crime Victim Compensation fee of $105.00.

On appeal, Walsh contends that (1) his rights under the Hawai'i Constitution were violated by the prosecutor's comments during closing argument that Walsh was able to tailor his testimony because he was present during jury *voir dire* and while other witnesses testified, (2) the circuit court's failure to instruct the jury that Walsh had a right to be present during the trial proceedings constituted plain error, and (3) the circuit court's order of restitution was invalid.

For the reasons discussed below, we vacate the judgment and remand the case to the circuit court.

## I. BACKGROUND

### A. The Incident

The charge against Walsh stems from a May 31, 2008 altercation between Walsh and several individuals in the town of Kihei, Maui.

Walsh and his sister, Stephanie, were arguing in the Kukui Mall (Mall) parking lot outside of the Oceans Bar and Grille (Oceans) at approximately 1:30 a.m. when a group of men in a truck parked in a nearby parking stall interrupted, cursed at, and began arguing with Walsh. Walsh cursed back at the men and told them to mind their own business. Four or five of the men advanced on Walsh and a fight ensued.

The confrontation went on for some time, with Walsh getting battered, kicked, and pushed around the parking lot. At some point, Walsh curled up on the ground because he was being kicked and stepped on. After some time, Walsh was able to crawl and stumble up.

According to Walsh, once he stood up, he stumbled toward the complainant, Kapena Kramer (Kapena), whereupon Walsh punched Kapena in the face. Walsh testified,

"And then I got up ... I just swung blindly, ... I was trying to hit whoever was around me because I was getting attacked."

John Cooprider (Cooprider), Oceans' general manager, however, testified that he observed Walsh approaching Kapena in a "calm, cool, collective (sic)," manner and without any apparent injuries. Cooprider said that he "wasn't alarmed by [Walsh] by any means." He saw Walsh look to his left, observe Kapena, pause, and then "turn[ ] with everything he had and hit [Kapena]". According to Cooprider, Kapena was positioned so that he could not see Walsh approaching. Walsh's punch knocked Kapena unconscious and fractured his jaw in two places.

Maui Police Officers arrived and arrested Walsh for Assault in the Second Degree. On June 27, 2008 Walsh was charged via Felony Information with "recklessly caus[ing] serious or substantial bodily injury to Kapena Kramer, thereby committing the offense of Assault in the Second Degree in violation of Section 707–711(1)(b) of the Hawaii Revised Statutes."

### B. Closing Arguments

During closing argument, the prosecutor stated, in relevant part:

> Some of you during *voir dire* and jury selection were asked about what you would look at, and the defense went into great detail. Remember one thing that was asked by me to the Defendant? You know, the Defendant, first of all, is entitled, since he's on trial here, is entitled to hear and see all the witnesses. *But with that becomes* [sic] *the facts* [sic] *that he's benefitted from seeing all these witnesses. Before he got up on that stand, he saw each and every one of the witnesses, heard what they were going to say.*
>
> *What's important about that is not only that, he heard the voir—diring* [sic] *your questions, which some of you had mentioned, I believe you said, well, you know, if they looked me in the eye. Okay, so he gets up here and looks each one of you in the eye. See how sincere I am? Does that mean you're sincere?*

(Emphasis added). Walsh did not object to the prosecutor's argument.

### C. Restitution Order in Judgment

In addition to incarceration, the circuit court ordered Walsh to pay restitution of $1,137.50 and a Crime Victim Compensation fee of $105.00. The manner of the restitution payment was "to be determined by the Director of the Department of Public Safety."

## II. POINTS OF ERROR

Walsh raises four points of error:

(1) The circuit court erred in allowing the prosecutor to make constitutionally impermissible arguments during closing argument that because Walsh was present during trial, he heard the testimony of all other witnesses and the *voir dire* of the jury, and tailored his testimony to match the evidence and appear more credible;

(2) The prosecutor's statements during closing argument constituted prosecutorial misconduct, and deprived Walsh of his right to due process and a fair trial;

(3) The circuit court plainly erred in failing to instruct the jury on Walsh's constitutional right to be present during the *voir dire* of the jury and the testimony of the witnesses, and that the jury must not draw any unfavorable inference based on his presence throughout the trial; and

(4) The circuit court's order of restitution was invalid because it delegated the decision of the "method and manner of payment" to the Director of the Department of Public Safety.

## III. STANDARDS OF REVIEW

### Constitutional Violations In Criminal Proceedings

The appellate court reviews questions of constitutional law *de novo* under the "right/wrong" standard and, thus, exercises its "own independent judgment based on the facts of the case." *State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (internal quotation marks and citation omitted).

## Prosecutorial Misconduct

■ "Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of whether there is a reasonable possibility that the error complained of might have contributed to the conviction." *State v. Rogan,* 91 Hawai'i 405, 412, 984 P.2d 1231, 1238 (1999) (internal quotation marks and citations omitted) (quoting *State v. Sawyer,* 88 Hawai'i 325, 329 n. 6, 966 P.2d 637, 641 n. 6 (1998)).

■ "Prosecutorial misconduct warrants a new trial or the setting aside of a guilty verdict only where the actions of the prosecutor have caused prejudice to the defendant's right to a fair trial." *State v. McGriff,* 76 Hawai'i 148, 158, 871 P.2d 782, 792 (1994). "In order to determine whether the alleged prosecutorial misconduct reached the level of reversible error, [the appellate court considers] the nature of the alleged misconduct, the promptness or lack of a curative instruction, and the strength or weakness of the evidence against defendant." *State v. Agrabante,* 73 Haw. 179, 198, 830 P.2d 492, 502 (1992).

## Unobjected To Closing Argument— Plain Error

■ The appellate court "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Nichols,* 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006) (quoting *State v. Sawyer,* 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998)).

■ "Where defense counsel failed to object to the statements made during the Prosecutor's closing argument, we ... determine whether the statements were improper and, if so, whether they constituted plain error that affected [Defendant's] substantial rights." *State v. Suan,* 121 Hawai'i 169, 174, 214 P.3d 1159, 1164 (App.2009) (citing *State v. Clark,* 83 Hawai'i 289, 304, 926 P.2d 194, 209 (1996)).

## Jury Instructions

■ The standard of review for jury instructions that were not objected to at trial was clarified in *State v. Nichols,* 111 Hawai'i 327, 141 P.3d 974 (2006), where the Hawai'i Supreme Court held that:

although as a general matter forfeited assignments of error are to be reviewed under [Hawai'i Rules of Penal Procedure (HRPP)] Rule 52(b) plain error standard of review, in the case of erroneous jury instructions, that standard of review is effectively merged with the HRPP Rule 52(a) harmless error standard of review because it is the duty of the trial court to properly instruct the jury. As a result, once instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, *i.e.,* that the erroneous jury instruction was not harmless beyond a reasonable doubt.

*Id.* at 337, 141 P.3d at 984. Thus, the appellant must first demonstrate instructional error by rebutting the "presumption that unobjected—to jury instructions are correct." *Id.* at 337 n. 6, 141 P.3d at 984 n. 6; *accord State v. Eberly,* 107 Hawai'i 239, 250, 112 P.3d 725, 736 (2005). If the appellant is able to rebut this presumption, the burden shifts to the State to prove that the error was harmless beyond a reasonable doubt because:

[e]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. However, error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled.

*Nichols,* 111 Hawai'i at 334, 141 P.3d at 981 (brackets in original omitted) (quoting *State v. Gonsalves,* 108 Hawai'i 289, 293, 119 P.3d 597, 601 (2005)). If the State cannot demonstrate that the error was harmless beyond a reasonable doubt, the conviction must be vacated. *Nichols,* 111 Hawai'i at 337, 141 P.3d at 984. The "harmless beyond a reasonable doubt" standard applies, whether the appel-

lant failed to object to an improper instruction, or failed to request a proper instruction. *State v. Stenger,* 122 Hawai'i 271, 281, 226 P.3d 441, 451 (2010).

## IV. DISCUSSION

 Walsh contends that the "Prosecutor's comments during closing argument that Walsh's presence during trial enabled him to tailor his testimony to match the evidence and to appear more credible violated [his] state constitutional rights." Specifically, Walsh argues that "[t]hese comments impermissibly infringed on [his] constitutional right to be present during the trial as guaranteed by article I, section 14 of the Hawai'i Constitution, and had a chilling effect on [his] right to testify on his own behalf as guaranteed by article I, sections 5, 10 and 14 of the Hawai'i Constitution."

 The State contends that Walsh's rights were not violated because Walsh put his credibility at issue by testifying during the trial.[2] In support, the State in large part relies on the United States Supreme Court decision *Portuondo v. Agard,* 529 U.S. 61, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000).

In *Portuondo,* the Supreme Court held that the defendant's Fifth and Sixth Amendment rights were not violated by the prosecutor's statements during closing argument:

> You know, ladies and gentlemen, unlike all the other witnesses in this case the defendant has a benefit and the benefit that he has, unlike all the other witnesses, is he gets to sit here and listen to the testimony of all the other witnesses before he testifies.
>
> . . . . .
>
> That gives you a big advantage, doesn't it. You get to sit here and think what am I going to say and how am I going to say it? How am I going to fit it into the evidence?
>
> . . . . .

He's a smart man. I never said he was stupid. . . . He used everything to his advantage.

*Id.* at 64, 120 S.Ct. 1119 (internal quotation marks omitted). The Court based its decision, in part, on the premise that "[a]llowing comment upon the fact that a defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony is appropriate—and indeed, given the inability to sequester the defendant, sometimes essential—to the central function of the trial, which is to discover the truth." *Id.* at 73, 120 S.Ct. 1119.

Justice Ginsburg, with whom Justice Souter joined, dissented, contending that the majority's holding "transform[ed] a defendant's presence at trial from a Sixth Amendment right into an automatic burden on his credibility." *Id.* at 76, 120 S.Ct. 1119. The dissent reasoned that, under the majority's holding, every defendant who testified would be susceptible to tailoring accusations and "[t]he prosecutorial comment at issue, tied only to the defendant's presence in the courtroom and not to his actual testimony, tarnishes the innocent no less than the guilty." *Id.* at 77–78, 120 S.Ct. 1119. Justice Ginsburg posited that the generic accusations of the prosecutor were of no value to the truth finding function of a trial, and that prohibiting such accusations "would rein in a prosecutor solely in situations where there is no particular reason to believe that tailoring has occurred. . . ." *Id.* at 78–79, 120 S.Ct. 1119.

Since submission of the briefs in this case, the Hawai'i Supreme Court has addressed the application of *Portuondo* and considered prosecutorial accusations of tailoring in closing argument under the Hawai'i Constitution in the case of *State v. Mattson,* 122 Hawai'i 312, 226 P.3d 482 (2010). In *Mattson,* the prosecutor stated during closing argument that:

> [The defendant] told you he lied before. He had a chance to sit through the evi-

---

**2.** The State contends that the portion of Walsh's claim relating to the prosecutor's comment concerning Walsh's presence at jury *voir dire* is not properly before this court because "[t]he *voir dire* is not part of the record on appeal, such that the allegation of improper comment . . . should be disregarded as beyond the scope of appeal." The issue, however, is not the jury *voir dire* itself, but the prosecutor's comment during closing argument regarding Walsh's right to witness jury *voir dire.* Therefore, it is not necessary that the transcript of the jury *voir dire* be part of the record on appeal.

dence. He had to make his story gibe with what you've heard. What is in evidence. What [Kumia] even had to admit to, because she—.... He sat through the evidence. *There is a 911 tape. [Kumia's] statement. [Hayashi's] statement. Based on all that, he is not telling the truth.* All of a sudden he remembered that he grabbed that knife.

This case is about credibility. In order to believe the defendant, you have to be able to answer why didn't [Kumia] just give him the key? Why did [Kumia] lock him out of the house that night? Why lie the day after the event? Thank you.

*Id.* at 326–27, 226 P.3d at 496–97.

The Hawai'i Supreme Court looked to *Portuondo* for guidance and concluded that the majority's holding did not adequately protect the defendant's rights guaranteed by article I, section 14 of the Hawai'i Constitution (the "confrontation clause"). *Id.* at 325, 226 P.3d at 495. Rather, the court agreed with Justice Ginsburg's dissent, that "generic accusations of tailoring during closing argument that are based only on a defendant's presence throughout the trial burden the defendant's constitutional right to be present at trial and could discourage a defendant from exercising his constitutional right to testify on his own behalf." *Id.* at 326, 226 P.3d at 496.

In sum, the *Mattson* court adopted the reasoning of Justice Ginsburg's dissent and concluded that it would be improper "under article I, section 14 of the Hawai'i Constitution, for the prosecutor to make generic accusations during closing argument that a defendant tailored his testimony based solely on the defendant's exercise of his constitutional right to be present during the trial." *Id.* The court, however, found that the prosecutor's specific statements were not impermissible because the prosecutor incorporated in his argument evidence adduced at trial to controvert the defendant's testimony.

In *Mattson*, the prosecutor's tailoring argument was not impermissible because "the prosecutor also referred to specific evidence adduced at trial that was directly contradictory to Mattson's testimony." *Id.* at 327, 226 P.3d at 497. The court stated that since "the

prosecution referred to specific evidence presented at trial *in addition* to referring to Mattson's presence at trial, it cannot be said that the prosecutor's remarks during closing argument constituted a 'generic accusation' that Mattson tailored his testimony based *solely* on his presence at trial." *Id.*

This case, however, reflects a generic accusation because the prosecutor's argument does not reference any evidence and relates only to Walsh's presence in the courtroom. The prosecutor's argument drew attention to Walsh's presence during witness testimony and jury *voir dire*, emphasized that Walsh had heard all of the testimony prior to testifying himself, and implied that Walsh tailored his testimony to appear more credible.

Contrary to Walsh's argument, the prosecutor did not state that Walsh tailored his testimony. The implication of the prosecutor's argument, however, was such that the jury was left with the inescapable conclusion that because Walsh exercised his right to be present during jury *voir dire* and other witnesses' testimony, he was tailoring his testimony.

Moreover, and unlike the *Mattson* case, the offending portion of the prosecutor's closing argument did not refer to specific evidence adduced at trial which controverted Walsh's testimony. Rather, the statement addressed only the possible nefarious consequences associated with Walsh exercising his constitutionally protected rights.

Walsh's failure to object to the closing argument at trial does not prevent us from addressing the issue on appeal. We "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *Nichols*, 111 Hawai'i at 334, 141 P.3d at 981 (quoting *Sawyer*, 88 Hawai'i at 330, 966 P.2d at 642).

"Where defense counsel failed to object to the statements made during the Prosecutor's closing argument, we ... determine whether the statements were improper and, if so, whether they constituted plain error that affected [Defendant's] substantial rights."

*Suan*, 121 Hawai'i at 174, 214 P.3d at 1164 (citing *Clark*, 83 Hawai'i at 304, 926 P.2d at 209).

Whereas the prosecutor's remarks during closing argument constituted a "generic accusation" that Walsh tailored his testimony based solely on his presence at trial, whereas we conclude that the evidence against Walsh was not overwhelming, and whereas, as a result, "the pivotal issue [in the case] was the credibility of the witnesses[,]" [3] Walsh's rights under article I, section 14 of the Hawai'i Constitution were violated. *See State v. Marsh*, 68 Haw. 659, 661, 728 P.2d 1301, 1302 (1986) (because credibility was a central issue in the case, the Hawai'i Supreme Court could not "conclude beyond a reasonable doubt that the prosecutor's remarks had little likelihood of influencing this critical choice"). We cannot conclude that the prosecutor's conduct did not contribute to Walsh's conviction, and we therefore vacate and remand to the circuit court for a new trial.

## V. CONCLUSION

Although we note the agreement of the State and Walsh concerning the impropriety of the restitution order, we need not reach this or any of the other issues raised on appeal in light of our decision. Accordingly, the circuit court's March 31, 2009 Judgment is vacated and the case is remanded for a new trial. *State v. Smith*, 91 Hawai'i 450, 460, 984 P.2d 1276, 1286 (App.1999) ("In situations where prosecutorial misconduct caused prejudice to the defendant's right to a fair trial, however, a new trial must be ordered.")

Concurring Opinion by FUJISE, J.

Today, we apply the rule adopted by the Hawaii Supreme Court in *State v. Mattson*, 122 Hawai'i 312, 226 P.3d 482 (2010) to a case of generic testimony tailoring. While I concur in the opinion of the court that the deputy prosecutor did make a generic testimony tailoring argument, I write separately to distinguish between what, in my view, were proper and improper arguments by the deputy prosecutor.

The *Mattson* rule, based on article I, section 14 of the Hawai'i Constitution, states that it is improper for the prosecution "to make generic accusations during closing argument that a defendant tailored his testimony based solely on the defendant's exercise of his constitutional right to be present during the trial." 122 Hawai'i at 326, 226 P.3d at 496. *Mattson* himself did not benefit from this rule, as the majority of the court there concluded that the deputy prosecutor did not make a generic accusation of tailoring. *Mattson*, 122 Hawai'i at 328, 226 P.3d at 498.

Here, the deputy prosecutor stated in her closing argument that Walsh "benefitted from seeing all these witnesses. Before he got up on that stand, he saw each and every one of the witnesses, heard what they were going to say." [1] While the deputy prosecutor did not explicitly accuse Walsh of tailoring his testimony, as Justice Scalia observed in

---

**3.** *State v. Marsh*, 68 Haw. 659, 661, 728 P.2d 1301, 1302 (1986) (because credibility was a central issue in the case, the Hawai'i Supreme Court could not "conclude beyond a reasonable doubt that the prosecutor's remarks had little likelihood of influencing this critical choice").

**1.** This was not a case of gamesmanship, a concern expressed by the *Mattson* majority and Justice Ginsberg's dissent relied upon by the *Mattson* majority. *See Mattson*, 122 Hawai'i at 326, 226 P.3d at 496 ("We also agree that 'allowing a prosecutor, *at a time when the defendant cannot respond*, to invite the jury to convict on the basis of conduct as consistent with innocence as with guilt[.]' " (quoting *Portuondo v. Agard*, 529 U.S. 61, 79, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000) (Ginsberg, J., dissenting)) (emphasis added)). In her cross-examination of Walsh, the deputy prosecutor also made the same point:

Q. By the way, you had the opportunity to sit here and listen to Iokepa Kramer's testimony, right?
A. Yes, I did.
Q. You had the opportunity to hear and listen to Kapena Kramer's testimony, right?
A. Yes.
Q. And you had the opportunity to sit here and listen to Dr. Earl Hasegawa's testimony?
A. Yes.
Q. And the both of the officers' testimony?
A. Yes.
Q. And you had the opportunity to sit here and hear your sister Stephanie Walsh testify, correct?
A. Yes.
Q. As well as you friend and her friend Lucy Mapson, correct?
A. Yes.

*Portuondo*, "[d]rawing the line between pointing out the availability of the inference and inviting the inference would be neither useful nor practicable." *Portuondo*, 529 U.S. at 68 n. 1, 120 S.Ct. 1119.

Nevertheless, this argument was not premised on any evidence presented during trial to support the inference that Walsh had tailored his testimony based on what he had heard. Thus, I agree that the deputy prosecutor's argument in this regard amounted to the generic accusation of tailoring prohibited by the rule announced in *Mattson*.

However, I would distinguish this argument from the subsequent argument challenged by Walsh:

> What's important about that is not only that, he heard the voir-diring your questions, which some of you had mentioned, I believe you said, well, you know, if they looked me in the eye. Okay, so he gets up here and looks each one of you in the eye. See how sincere I am? Does that mean you're sincere?

In this latter argument, the deputy prosecutor made a separate point, that Walsh, having heard some of the jurors state that they took eye contact as indicative of truthfulness actually took their cue and looked at the jurors during his testimony.

While the transcript of the jury selection is not before us, Walsh does not argue that these representations made by the deputy prosecutor were inaccurate. Assuming then, that these comments were made by at least some of the jurors and that Walsh did, in fact deliver his testimony in such a manner, the deputy prosecutor's subsequent argument was not merely a generic accusation of tailoring, but was based on Walsh's actions after he witnessed the juror's comments. *See People v. Edelbacher*, 47 Cal.3d 983, 254 Cal. Rptr. 586, 766 P.2d 1, 30 (1989) ("prosecutorial comment in argument on an accused's courtroom demeanor ... [was not prohibited where] the defendant has testified and put his credibility in issue.")

The jurors heard the responses given during voir dire and witnessed Walsh's trial testimony themselves. As such, they were in the best position to judge whether Walsh tailored his comportment to their comments. As I view this argument by the deputy prosecutor as merely a request that the jury consider matters before them, I conclude that this argument was not improper.