Arthur Louis MARTINEZ, Petitioner

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 09SC887.

Supreme Court of Colorado,
En Banc.

Nov. 30, 2010.

Rehearing Denied Jan. 10, 2011.*

* Justice Marquez does not participate.

Douglas K. Wilson, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, John J. Fuerst III, Senior Assistance Attorney General, Denver, Colorado, Attorneys for Respondents.

Justice MARTINEZ delivered the Opinion of the Court.

The defendant, Arthur Martinez, appeals his conviction for second degree assault and conspiracy to commit second degree assault. During closing rebuttal argument, the prosecutor twice accused the defendant of tailoring his testimony to meet the facts testified to by

prior witnesses. The prosecutor did not, however, tie these accusations of tailoring to evidence presented at trial. Rather, the prosecutor said that the defendant's mere presence at trial enabled him to tailor his testimony. Although Martinez objected on the general grounds that the argument was improper, his objection was overruled. After he was convicted, Martinez appealed. In the published opinion of *People v. Martinez,* the court of appeals affirmed the conviction. 224 P.3d 1026 (Colo.App.2009). We granted certiorari and now affirm the judgment of the court of appeals on different grounds.

## I.

Defendant Arthur Martinez was charged in Adams County with first degree assault and conspiracy to commit first degree assault. The prosecution sought to establish that on September 24, 2002, defendant came up behind the victim, Arthur Perez, and savagely attacked him with a large flashlight. The following facts, which provide context for the prosecutor's closing argument, were adduced at trial.

Perez testified that on September 24, 2002, he and a friend, Andrew Gonzalez, were at a sports bar where Perez's girlfriend worked. The defendant and his friend, Dominick Fernandez, were also present. Throughout the evening, Fernandez "hit on" Perez's girlfriend.

At closing time, the defendant and Fernandez left the bar and got into Fernandez's car. Before they had exited the bar's parking lot, however, they saw Perez and Gonzalez also leaving the bar. Accordingly, Fernandez stopped the car. They both got out and approached Perez and Gonzalez. There were conflicting accounts of what occurred next.

Gonzalez, the victim's friend, testified that when the defendant and Fernandez approached, the defendant had a large flashlight in his hand. Gonzalez threw the first punch at Fernandez because he was sure a fight was going to ensue. He then heard the sound of the flashlight hitting Perez's head and turned to see the defendant hit Perez two more times with the flashlight. Gonzalez ran over to help his unconscious friend and

intervened before the defendant could strike another blow.

The court admitted into evidence a video from a parking lot security camera. According to the detective's frame-by-frame narration, the video showed that Fernandez's car made a U-turn and drove toward Perez and Gonzalez. Fernandez and the defendant got out of the car and approached Perez and Gonzalez. Although the video does not conclusively show the defendant with a flashlight in his hand, it does show him taking an overhand "swing, not a punch" at Perez—a motion that, according to the detective's testimony, would be consistent with swinging a flashlight.

The defendant testified on his own behalf and provided a different account of the events that evening. He testified that he was an experienced fighter who had engaged in fist fights while in prison. Accordingly, he knew how to hit Perez with his fist and did just that. When Perez dropped to the ground unconscious, the defendant stepped over him and got into a fight with Gonzalez. While fighting with Gonzalez, the defendant looked over and saw his friend—Fernandez—hammering away on the victim.

During the prosecutor's cross-examination of the defendant, she asked, "[Y]ou've had the advantage of sitting in court today and listening to all the testimony, as well as yesterday; is that correct?" Defendant responded, "Correct."

Later, during closing rebuttal argument, the prosecutor argued that the defendant had taken advantage of his presence at trial and tailored his testimony to what other witnesses said. The defendant objected on the general grounds that this was improper argument.

[Prosecutor]: [Defense counsel] was adamant that his client was so truthful. Well, he's had kind of an advantage, hasn't he? He's been able to sit in here the whole time and listen to what everybody had to say.

[Defense counsel]: I'm going to object. This is improper. He's entitled [to] sit and hear the trial to which he's argued.

[Prosecutor]: I can argue that he's not credible.

Despite the defendant's objection, the trial court stated that the defendant had a right to be present at trial, implicitly overruling the objection to improper argument.

[The court]: I understand. Ladies and gentlemen, the Defendant obviously is entitled to sit in on his own trial. It would be clearly unconstitutional to prohibit that, unless certain stringent requirements are met; and they certainly haven't been met in this case.

I would simply remind you again, it is simply argument and not evidence.

The prosecutor then continued with her argument that the defendant was able to tailor his testimony. Again though, the prosecutor failed to reference any evidence in the record of tailored testimony. Rather, she continued to focus on the defendant's mere presence at trial.

[Prosecutor]: What I am arguing is not that he does not have a right to be here and that he does not have the right to listen and offer help to his attorney and his defense to give a meaningful defense.

What I'm telling you is that you get to judge the credibility of all witnesses and that he had an advantage that nobody else did, which is that he was able to tailor his statement with what everybody else had to say because he's been here.

The defendant again objected on the general basis that the argument was improper.

[Defense counsel]: I object, Judge. This is improper testimony [sic]. The lead detective had the same opportunity to tailor his testimony. This is improper testimony [sic], commenting on the Defendant's presence at trial. We object to it.

[The court]: Noted. And I'm sure the jury also noted that the Detective was present in court during the trial also.

The jury found the defendant guilty of the lesser included offenses of second degree assault and conspiracy to commit second degree assault. The trial court imposed consecutive prison sentences of sixteen years for the assault conviction and six years for the conspiracy conviction.

The defendant appealed the judgment to the court of appeals. Due to the United States Supreme Court decision of *Portuondo v. Agard,* 529 U.S. 61, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000), the defendant acknowledged that the federal Constitution does not prohibit the tailoring argument made by the prosecutor. Nonetheless, on appeal, the defendant argued for the first time that the Colorado Constitution prohibits tailoring arguments like the one in this case. The defendant also argued, consistent with his objection at trial court, that the prosecutor's tailoring argument constituted improper argument.

In the published opinion of *Martinez,* a division of the court of appeals affirmed the judgment. 224 P.3d at 1026. The court of appeals identified at least four instances in the record where the defendant tailored his testimony to "track" the testimony of the prosecution's witnesses. *Id.* at 1036–38. Due to this evidence of tailoring, the court of appeals found that there was sufficient evidence of specific tailoring to justify the prosecutor's closing argument. *Id.* at 1037. It therefore concluded that there was no improper argument at closing. *Id.* at 1038.

The court of appeals also reached the defendant's Colorado Constitutional argument. The court could not, however, identify a persuasive reason for concluding that the Colorado Constitution offers protection independent of and supplemental to the federal Constitution. *Id.* at 1035–36. Accordingly, the court rejected the defendant's contention that the Colorado Constitution prohibits tailoring arguments. *Id.* at 1036.

Despite reaching the merits of the defendant's Colorado Constitutional argument, the court of appeals never considered whether the defendant had properly preserved this issue for appellate review. We granted certiorari to review the decision of the court of appeals.[1]

1. We granted certiorari on the following issue presented by defendant:

(1) Whether Petitioner's rights under the Colorado Constitution to be present during his jury trial and to confrontation were violated when

## II.

The defendant objected to the prosecutor's closing argument without mentioning any federal or Colorado Constitutional violation. Rather, the defendant objected on the general grounds that the prosecutor's argument was improper. Objections interrupting a prosecutor's closing argument often allege improper argument. *See, e.g., People v. Loscutoff*, 661 P.2d 274, 278 (Colo.1983); *People v. Ferrell*, 200 Colo. 128, 613 P.2d 324, 326–27 (1980). Accordingly, we interpret the defendant's two objections to raise only the issue of improper trial argument.

■ Even if the defendant's objections had raised a general constitutional violation, they would have been to no avail. A general constitutional objection, if made, will be presumed to be based on federal Constitutional grounds. *See People v. Rodriguez*, 209 P.3d 1151, 1156 (Colo.App.2008) (where there is no specific objection, we presume the defendant's objections are based on federal, not state, constitutional grounds and limit our review accordingly). In *Portuondo*, the United States Supreme Court expressly held that tailoring arguments do not violate a defendant's rights under the federal Constitution. 529 U.S. at 65, 120 S.Ct. 1119. Accordingly, even if the defendant had objected on the grounds that the prosecutor's closing argument violated his right to be present at trial, the objection would have been futile.

*Portuondo* did not address whether tailoring arguments are permitted under state constitutions. Moreover, the United States Supreme Court explicitly left to state courts to determine whether tailoring arguments are "desirable as a matter of sound trial practice." *Id.* at 73 n. 4., 120 S.Ct. 1119 As such, since *Portuondo* was decided, a handful of state courts have addressed these unresolved issues. *See, e.g., State v. Swanson*, 707 N.W.2d 645, 657–58 (Minn.2006) (addressing whether tailoring arguments are improper); *State v. Daniels*, 182 N.J. 80, 861 A.2d 808, 819 (2004) (same); *Commonwealth v. Gaudette*, 441 Mass. 762, 808 N.E.2d 798, 802 (2004) (same); *see also State v. Mattson*,

122 Hawai'i 312, 226 P.3d 482, 496 (2010) (addressing whether tailoring arguments violate defendant's rights under state constitution); *State v. Walsh*, 123 Hawai'i 284, 231 P.3d 1001, 1006 (2010) (same); *State v. Martin*, 151 Wash.App. 98, 210 P.3d 345, 346, 348 (2009) (same).

In the instant case, the court of appeals addressed both of these issues left unresolved in *Portuondo*. First, it concluded that tailoring arguments do not violate the Colorado Constitution. *Martinez*, 224 P.3d at 1035. It then concluded that, based on the evidence in the record, the prosecutor's tailoring argument was not improper. *Id.* at 1036–38.

■ As a threshold matter, however, appellate courts should not reach Colorado Constitutional arguments raised for the first time on appeal. *See People v. Cagle*, 751 P.2d 614 (Colo.1988) (it is axiomatic that an appellate court will not consider constitutional issues not raised in the trial court). As such, counsel must object with sufficient particularity to draw the trial court's attention to a Colorado Constitutional violation. *See also Vigil v. People*, 134 Colo. 126, 129, 300 P.2d 545, 547 (Colo.1956). Thus, we first consider whether the defendant's objections to the prosecutor's closing argument were sufficiently particular to preserve a Colorado Constitutional issue for appeal.

### A.

■ At trial, the purpose of an objection is not only to express disagreement with a proposed course of action, but also to " 'afford[ ] the judge an opportunity to focus on the issue and hopefully avoid the error.' " *Am. Family Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 325 (Colo.2009) (quoting *United States v. Turman*, 122 F.3d 1167, 1170 (9th Cir.1997)). Vague and unspecific objections will not therefore be recognized on appeal because they fail to call the trial court's attention to the alleged error. *See Vigil*, 300 P.2d at 547 (noting that a defendant's vague Colorado Constitutional objection did not

the prosecution asserted in closing argument, without evidentiary reference and support, that

Petitioner had tailored his testimony.

warrant the Court's consideration on appeal). To preserve a Colorado Constitutional argument for appeal, then, a defendant must make an objection sufficiently specific to call the attention of the trial court to the potential Colorado Constitutional error.

Before the court of appeals, the defendant argued for the first time that the prosecutor's tailoring argument violated his rights under the Colorado Constitution. Specifically, he maintained that the Colorado Constitution should be interpreted to provide broader protection than the United States Constitution with respect to the defendant's rights to appear in person and testify in his defense at trial. The court of appeals reached this argument, but easily concluded that the Colorado Constitution does not offer protection that is "independent of and supplemental to the protections afforded by the United States Constitution." *Martinez,* 224 P.3d at 1035–36. However, the court of appeals did not consider whether the defendant had properly preserved his Colorado Constitutional argument for appeal.

After reviewing the trial court transcript, we conclude that the defendant's trial court objections failed to preserve a Colorado Constitutional argument for appeal. The transcript shows that the defendant objected twice to the prosecutor's closing rebuttal argument. The defendant first objected on the general grounds that the prosecutor's argument was "improper." Because the trial court overruled this objection, the prosecutor continued to comment on the defendant's ability to tailor his testimony. The defendant then made a second objection, stating this time that the prosecutor's argument was "improper testimony." Neither of these objections alerted the trial court to a Colorado Constitutional violation. As a result, we conclude that the defendant failed to preserve his Colorado Constitutional argument for appeal. *See Vigil* 300 P.2d at 547. We therefore vacate that part of the court of appeals' decision reaching the Colorado Constitutional issue.

Instead, both of the defendant's objections alerted the trial court to the potential impropriety of the prosecutor's closing argument. Objections at closing argument are often raised in response to improper trial practice or inappropriate argument. *See, e.g., Ferrell,* 613 P.2d at 326–27 (objection to propriety of closing argument where prosecutor urged jurors to retaliate against the defendant); *Loscutoff,* 661 P.2d at 278 (objection to propriety of closing argument where prosecutor mentioned his personal belief). Moreover, in *Portuondo,* the United States Supreme Court noted that it might be appropriate for trial courts to consider the propriety of tailoring arguments. 529 U.S. at 73 n. 4, 120 S.Ct. 1119. In this light then, we conclude that the defendant's first objection alerted the trial court to a potentially improper closing argument. Similarly, even though the defendant's second objection referred to improper "testimony," we interpret it as an objection to the prosecutor's closing argument on the grounds that it—the argument—was improper. Accordingly, only the issue of the propriety of tailoring arguments was properly preserved for appeal.

## B.

In reviewing the propriety of the prosecutor's argument, we must first determine whether tailoring arguments are improper. We then address whether the prosecutor's closing argument warrants reversal.

### 1.

■ It has often been stated that "a prosecutor, while free to strike hard blows, 'is not at liberty to strike foul ones.'" *E.g., Wilson v. People,* 743 P.2d 415, 418 (Colo.1987) (quoting *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)). Thus, a prosecutor must stay within the ethical boundaries outlined by this Court during closing argument or risk reversal. *See People v. Rodriguez,* 794 P.2d 965, 972 (Colo. 1990).

■ It is a longstanding rule that a prosecutor's closing argument should be based on the evidence in the record and all reasonable inferences to be drawn therefrom. *See Domingo–Gomez v. People,* 125 P.3d 1043, 1048 (Colo.2005). Section 3–5.8(a) of the *ABA Standards for Criminal Justice, Prosecution Function, and Defense Function,* (3d ed.

1993) [hereinafter "ABA Standards"] provides that:

(a) In closing argument to the jury, the prosecutor may argue *all reasonable inferences from evidence in the record.* The prosecutor should not intentionally misstate the evidence or mislead the jury as to the inferences it may draw.

(Emphasis added). A prosecutor may therefore properly draw reasonable inferences from the evidence as to the credibility of witnesses. *See Wilson*, 743 P.2d at 418; *People v. Constant*, 645 P.2d 843, 845–46 (Colo.1982).

 Whether tailoring arguments fall within these general principles of proper argument depends on whether the tailoring argument is generic or specific. Generic tailoring arguments occur when the prosecution attacks the defendant's credibility by simply drawing the jury's attention to the defendant's presence at trial and his resultant opportunity to tailor his testimony. *See Portuondo*, 529 U.S. at 78, 120 S.Ct. 1119 (Ginsburg, J., dissenting) (citing with approval the court of appeals' definition of generic tailoring in *Agard v. Portuondo*, 159 F.3d 98, 99 (2d. Cir.1998)). The prosecutor does not, however, reference any instances in the record where the defendant actually engaged in tailoring. *Id.*

In contrast, tailoring arguments are considered specific when the prosecutor cites to an evidentiary basis in the record. *Id.; see also Portuondo*, 159 F.3d at 99. For example, the prosecution might reference facts in the record indicating that a defendant has tailored "specific elements of his testimony to fit with particular testimony given by other witnesses." *Id.* Alternatively, inconsistencies between a defendant's statements to police and his testimony at trial might serve as specific evidence of tailoring. *See Gaudette*, 808 N.E.2d at 803.

 The distinction between a generic and a specific tailoring argument fixes the line between proper and improper argument. Generic tailoring arguments are improper because they are not based on reasonable inferences from evidence in the record. *See Domingo–Gomez*, 125 P.3d at 1048; *See also*

ABA Standards § 3–5.8(a). As the Minnesota Supreme Court noted, generic tailoring arguments "imply that all defendants are less believable simply as a result of exercising the right of confrontation. The exercise of this constitutional right, by itself, is not evidence of guilt." *Swanson*, 707 N.W.2d at 658. Indeed, guilty and innocent defendants alike have a statutory duty to be present at trial. *See* Crim. P. 43(a). It would therefore be unreasonable for a prosecutor to question a defendant's credibility based on his mere presence at trial.

Furthermore, generic tailoring arguments are undesirable as a matter of sound trial practice due to many of the same constitutional concerns at issue in *Portuondo*. As the dissent in *Portuondo* noted, a generic tailoring argument "transforms a defendant's presence at trial from a Sixth Amendment right into an automatic burden on his credibility." 529 U.S. at 76, 120 S.Ct. 1119 (Ginsburg, J., dissenting). Even though the federal Constitution does not prohibit tailoring arguments, Justice Ginsburg's dissent in *Portuondo* does highlight the fact that such general arguments, particularly when "launched on summation," are unfair and contrary to the principles of proper trial practice. *Id.* at 80, 120 S.Ct. 1119. We therefore hold that prosecutors are prohibited from making generic tailoring arguments. *Accord Swanson*, 707 N.W.2d at 657–58; *Gaudette*, 808 N.E.2d at 803; *Daniels*, 861 A.2d at 819.

Prosecutors may, however, make specific tailoring arguments when they are tied to evidence in the record. In such circumstances, it is reasonable for the jury to draw inferences regarding the credibility of the defendant. Moreover, specific tailoring arguments do not mislead the jury into making a credibility determination based solely on the fact that the defendant exercised his right to be present at trial. Finally, permitting specific tailoring arguments preserves the State's opportunity to attack the credibility of a defendant who actually tailors his testimony to fit that of other witnesses. *See Constant*, 645 P.2d at 845–46 (Colo.1982) ("Counsel can with propriety comment on how well and in what manner a witness

measures up to the tests of credibility set forth in the [jury] instruction.").

■ Applying this framework to the instant case, we conclude that the prosecutor's tailoring arguments were improper. During rebuttal argument, the prosecutor referenced defendant's presence at trial two times. The prosecutor first suggested that the defendant had been "able to sit in here the whole time and listen to what everybody had to say." The prosecutor then asked the jury "to judge the credibility of all witnesses" because he "was able to tailor his statement with what everybody else had to say because he's been here." In all three instances, then, the prosecutor clearly failed to tie her tailoring arguments to evidence in the record. Instead, the prosecutor merely referenced the defendant's presence at trial, asking the jury to draw an unreasonable inference regarding the defendant's credibility. These are precisely the types of generic tailoring arguments that rise to the level of improper trial argument.

Nonetheless, despite the prosecutor's generic tailoring argument, the court of appeals found no impropriety. *Martinez*, 224 P.3d at 1038. To support this conclusion, the court of appeals focused on the broader context of the prosecutor's argument. After a thorough review of the record, the court of appeals found at least four instances where defendant tailored his testimony to fit the testimony of the prosecution's witnesses. *Id.* at 1037–38. Specifically, the defendant mimicked one witness, implied that same witness was lying, and explicitly accused another witness of lying. The court of appeals therefore concluded that there was specific evidence, albeit unmentioned, that provided the context—and hence the justification—for the prosecutor's tailoring argument. *Id.* at 1038.

■ We recognize that the propriety of a prosecutor's closing argument must be considered in the context of the case.

"[T]he context in which challenged prosecutorial remarks are made is significant, including the nature of the alleged offenses and the asserted defenses, the issues to be determined, the evidence in the case, and the point in the proceedings at which the remarks were made."

*Harris v. People*, 888 P.2d 259, 266 (Colo. 1995). Ultimately, though, the line between proper and improper argument must depend on whether the prosecutor tied the tailoring argument to evidence in the record. Due to the wide latitude given a prosecutor at closing argument, *see Domingo–Gomez*, 125 P.3d at 1048, we do not require prosecutors to follow a rigid or formulaic method when referencing evidence in the record. The prosecutor must nonetheless make some reference to evidence of tailoring to remain within the bounds of proper argument. When determining the propriety of a tailoring argument, the question for a trial court is whether the prosecutor ties the tailoring argument to evidence in the record.

In the instant case, as the court of appeals recognized, the prosecutor failed to reference any evidence of tailoring during her closing argument. As a result, her general tailoring argument was improper. We therefore disagree with the court of appeals' reliance on unmentioned instances of tailoring. Even though the prosecutor could have referenced evidence in the record, she did not. Thus, her argument was that the defendant was able to tailor his testimony rather than that he in fact did tailor his testimony. However, the four unmentioned instances of tailoring weigh heavily in our harmless error analysis.

### 2.

■ Having decided there was improper argument, we must now determine whether the prosecutor's argument constitutes harmless error. As we noted previously, even though defense counsel objected to the prosecutor's closing argument, he failed to alert the trial court to a constitutional error. The defendant's objections at closing argument did, however, alert the trial court to improper argument. Because no constitutional issue is properly before this court, we review the impropriety of the prosecutor's closing argument for non-constitutional trial error under Crim. P. 52(a). *Crider v. People*, 186 P.3d 39, 42–43 (Colo.2008).

■ In evaluating the prejudicial impact of trial error, we consider the totality of the

circumstances, *id.* at 42, including the strength of the admissible evidence supporting the verdict, *see Domingo–Gomez,* 125 P.3d at 1050, as well as the specific nature of the error committed and the nature of the prejudice or risk of prejudice associated with it. *See Golob v. People,* 180 P.3d 1006, 1013–14 (Colo.2008). "[W]e have consistently held that even properly objected-to trial error will be disregarded as harmless whenever there is no reasonable probability that it contributed to the defendant's conviction." *Crider,* 186 P.3d at 42. In this case, based on the totality of the circumstances and the nature of the prejudice associated with the error, we conclude that there was no reasonable probability that the trial error contributed to the defendant's conviction.

The evidence in this case minimizes the prejudice associated with the prosecutor's improper generic tailoring argument. During the direct examination of the defendant, there were no less than four instances where the defendant himself commented on and expressly incorporated the testimony of prior witnesses. *See Martinez,* 224 P.3d at 1037–1038. Thus, although the prosecutor did not reference these specific instances during her closing argument, the jury likely would have understood her argument in the context of the defendant's testimony. As such, the implication of the prosecutor's general tailoring argument that the defendant was less credible simply as a result of his presence at trial is diminished, thereby rendering harmless any potential for prejudice caused by the prosecutor's generic tailoring comments.

The prosecutor's generic tailoring comments are further rendered harmless due to the substantial evidence calling into question the defendant's credibility. For example, the defendant testified that he was an experienced fighter and punched the victim. The jurors were able to compare this testimony with a video of the attack in the parking lot. Essentially, the video shows the defendant using an overhand swinging motion consistent with using a flashlight to hit Perez. The prosecution argued that this video directly contradicted defendant's testimony that he threw a punch. At the very least, the video called into question the defendant's credibili-

ty. Thus, the impact of the prosecutor's tailoring argument, a few sentences in a three day jury trial, is minor compared to the video of the fight and the defendant's explicit tailoring of his own testimony.

Based on the totality of the circumstances and the unique record in the case, we conclude there is no reasonable probability that the prosecutor's generic tailoring argument, even though improper, influenced the jury's determination of the defendant's credibility or guilt.

### III. Conclusion

For the foregoing reasons, the judgment of the court of appeals is affirmed on different grounds.

Justice EID concurs in part and concurs in the judgment in part, and Justice COATS joins in the concurrence in part and concurrence in the judgment in part.

Justice EID, concurring in part and concurring in the judgment in part.

I agree with the majority that the defendant did not properly preserve his claim under the Colorado Constitution and therefore join part II.A. of the opinion. However, I disagree with the majority's holding that, in order to make a tailoring argument, a prosecutor must point out to the jury specific instances in which the defendant tailored his testimony. Maj. op. at 142–43. In support of its position, the majority relies on the dissent in *Portuondo v. Agard,* 529 U.S. 61, 76, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000) (Ginsburg, J., dissenting). Maj. op. at 141. But the *Portuondo* dissent does not require the prosecutor to point out specific instances of tailoring to the jury. On the contrary, it endorses the "decision below [which] would rein in a prosecutor solely in situations where there is no particular reason to believe that tailoring has occurred...." 529 U.S. at 78, 120 S.Ct. 1119. Here, as the majority concedes, there were a number of instances during defendant's testimony in which there was "particular reason" to believe he engaged in tailoring. Maj. op. at 142 (noting that defendant "mimicked one witness, im-

plied that same witness was lying, and explicitly accused another witness of lying"). Because the jury heard those specific instances of defendant's tailoring, it was not necessary for the prosecutor specifically to draw its attention to them in order to make a tailoring argument. Accordingly, I concur only in the judgment with respect to part II.B. of the majority's opinion.

I am authorized to say that Justice COATS joins in this opinion concurring in part and concurring in the judgment in part.